IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

**EOD**

07/23/2012

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **VICTOR COLLINS DeBLANC, Sr.** | § | |
| xxx-xx-3962 | § | Case No. 11-44450 |
| **and PAM NASH DeBLANC** | § | |
| xxx-xx-8006 | § | |
| P O Box 111, Princeton, TX  75407 | § | |
| | § | |
| Debtors | § | Chapter 7 |

| | | |
|---|---|---|
| JUDD RYAN | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 11-4053 |
| | § | |
| VICTOR COLLINS DeBLANC, Sr. | § | |
| | § | |
| | § | |
| Defendant | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]

Upon trial of the complaint filed by the Plaintiff, Judd Ryan, ("Plaintiff" or

"Ryan") seeking a determination of whether an alleged debt owed to it by the Defendant-

Debtor, Victor Collins DeBlanc, Sr. ("Defendant" or "Debtor"), is dischargeable, the

Court issues the following findings of fact and conclusions of law.  The Plaintiff contends

that the debt is non-dischargeable as a debt obtained by fraud or by false representations

pursuant to 11 U.S.C. §523(a)(2)(A).  No other ground was asserted in the complaint.

---

[1] These findings of fact and conclusions of law are not designated for publication and shall not considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as to other applicable evidentiary doctrines.

After the trial, the Court took the matter under advisement. This decision disposes of all issues pending before the Court.

## FINDINGS OF FACT[2]

1. The Plaintiff, Judd Ryan, is an individual who has been engaged in various aspects of the construction industry, including as a project supervisor and superintendent, over the past 30 years.

2. The Defendant, Victor Collins DeBlanc, Sr., owned a majority interest in a construction firm known as DeBlanc Construction Services, Inc. ("DCS").

3. The Plaintiff worked for DCS in various capacities for a two-year interval between 1997 and 1999.

4. After three years of employment with another firm, the Plaintiff and the Defendant met at El Tiempo restaurant in Houston in September 2002 to discuss the Plaintiff's return to DCS, initially as a project manager.

5. The parties agreed that the Plaintiff would be paid an annual salary of $72,000, plus additional compensation based upon net profits realized by the construction company.

6. However, the additional compensation scheme, sketches of which were outlined on a napkin at the restaurant, was never formally reduced to writing.

7. No discussions occurred between the parties regarding termination policies or the impact of resignation or termination upon the vesting of the additional compensation package.

8. There was no formal policy handbook at DCS, nor any other document that specified the nature of this additional compensation package.

9. Indeed, the Plaintiff was the only employee of DCS with this type of additional compensation package.

---

[2] All stipulated facts were set forth in the approved Joint Pre-Trial Order entered in this adversary proceeding. The Court will reference only those facts necessary or germane to a decision on this matter.

10.    The general course of conduct followed by the parties regarding this additional compensation component during this second stint of employment of the Plaintiff at DCS was that[3]:

    (a)    the Plaintiff would be given financial "advances" of his additional compensation as requested that would be accounted for when the parties "settled up" in the year-end financial reconciliations;

    (b)    the Plaintiff and DCS would exchange spreadsheets regarding the gross and net profit that had been derived from individual jobs under the Plaintiff's supervision that had been completed and paid for in the preceding year.

    (c)    deductions would be made from the gross profit for overhead costs, including insurance, supervision, and a $200,000 base fee;

    (d)    the Plaintiff was paid 20% of the first $50,000 in net profits [$10,000]; 30% of the next $50,000 in net profits [$15,000]; and 40% of the remaining amount of net profits, with deductions for any advances previously tendered to the Plaintiff.

11.    There was no strict chronological timetable for the final reconciliation and payment for each year.

12.    The reconciliation was usually performed in January or February of the succeeding year.  Actual payment was subject to a number of business factors including cash reserves, professional financial advice, and other business considerations.

13.    For 2004 services, the Plaintiff received $39,381 as additional compensation, less $5,000 previously advanced to the Plaintiff for that year.  The amount owed for 2004 was not calculated nor paid until 2005.

14.    For 2005 services, the Plaintiff received $68,541 as additional compensation, less $7,000 previously advanced for that year.  The amount owed for 2005 was not calculated nor paid until 2006.

15.    For 2006 services, the Plaintiff received $256,058 as additional compensation, less $11,100 for a 401(k) contribution for the Plaintiff and $150,000 previously

---

[3]  Defendant's Ex. B.

advanced to the Plaintiff for that year.  The amount owed for 2006 was not calculated nor paid until 2007.

16.  The Plaintiff resigned from his position at DCS in October 2007.

17.  The Plaintiff demanded a reconciliation as of October 2007 and the calculation and payment of his additional compensation for 2007.  The Defendant refused.

18.  The Plaintiff believed that he had "earned" the additional compensation upon completion of a particular project based upon the amount of net profit realized on that particular job upon full payment by the customer, even though the compensation amount might not be paid until the year-end reconciliation occurred.

19.  The Plaintiff initiated litigation in state court in 2007 against the Defendant and DCS in state court for breach of contract for the Defendant's failure to pay the additional compensation for 2007.

20.  The Defendant responded to the state court lawsuit by asserting in December 2007, through his attorneys in the state court litigation, that "it is the Company's policy not to distribute a year end bonus to an employee who is no longer employed with the Company at the end of the year."[4]

21.  No allegation of fraud against the Defendant was asserted[5] nor proven in the state court litigation.

22.  On or about November 12, 2008, the state court found that DCS was an alter ego of the Defendant and entered a judgment in favor of the Plaintiff against the Defendant and DCS for $291,315 "as damages for breach of contract," pre-judgment interest in the amount of $13,214.68, and $7,245 in attorneys' fees, for a total award of $311,774.68.[6]

23.  On December 30, 2010, the Defendant filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court under bankruptcy case no. 10-44450.

---

[4]  Plaintiff's Ex. 2.

[5]  Defendant's Ex. A.

[6]  Plaintiff's Ex. 1.

24.    On March 23, 2011, the Plaintiff filed the complaint in this adversary proceeding and now seeks a determination, pursuant to the approved Pre-Trial Order,[7] that the debt owing to the Plaintiff by the Defendant is non-dischargeable under 11 U.S.C. §523(a)(2)(A) because the Defendant allegedly failed to disclose an existing company policy at the time of the agreement that additional compensation would not be paid to the Plaintiff for a particular year unless the Plaintiff was employed by DCS at the end of that particular year.

25.    The Plaintiff has failed to demonstrate by a preponderance of the evidence that the debt owed to it by the Defendant was procured under circumstances constituting actual fraud.

26.    The Plaintiff has failed to demonstrate by a preponderance of the evidence that the debt owed to it by the Defendant was procured through a false representation through the silence of the Defendant in failing to disclose an existing company policy that no additional compensation would be paid to any employee who was not employed at the end of a particular year.

27.    The Plaintiff has failed to demonstrate by a preponderance of the evidence that there was an existing company policy in September 2002 that no additional compensation would be paid to any employee who was not employed at the end of a particular year, thereby imposing upon the Defendant a "duty to speak" regarding that existing policy.

28.    There was no existing company policy at DCS in September 2002 regarding the necessity of year-end employment for the Plaintiff's compensation package because no other DCS employee had such a compensation package.

29.    The additional compensation package enjoyed by the Plaintiff was derived by the Plaintiff and the Defendant as a product of their negotiations for the Plaintiff's return to DCS.

30.    The parties simply failed to contemplate in their September 2002 agreement regarding the Plaintiff's compensation package when the additional compensation

---

[7]  It is a well-settled rule that a joint pretrial order signed by both parties supersedes all pleadings and governs the issues and evidence to be presented at trial."  *Kona Technology Corp. v. Southern Pacific Transp. Co.*, 225 F.3d 595, 604 (5th Cir. 2000); *see also Moser v. Mullican (In re Mullican)*, 2008 WL 5191196 at *12 (Bankr. E.D. Tex., Sept. 30, 2008) [noting that "a claim or defense not raised in the pre-trial order may be deemed waived, even if it appeared in the complaint"], *citing Elvis Presley Enterprises v. Capece*, 141 F.3d 188, 206 (5th Cir. 1998).

would be deemed "earned" by the Plaintiff.

31.    The parties failed to contemplate in their September 2002 agreement regarding the Plaintiff's compensation package the effect of cessation of employment by the Plaintiff prior to the end of a calendar year.

32.    The characterization of the additional compensation as a "bonus" vis-a-vis a "commission" is not determinative of the issue as to when the Plaintiff's right to such compensation became vested in each particular year.

33.    The structure of compensation packages contemplating a "bonus" or a "commission" may vary widely throughout the business world.  Either contingency advocated by the parties [end of job vs. end of year] is logically feasible and defensible.

34.    While the state court was obviously free to accept either theory, and did so in its determination of the existence of a debt owing to the Plaintiff, it did not conclude that the Defendant had knowingly engaged in fraud.

35.    The mutual failure of the parties in September 2002 to clarify when the Plaintiff's right to additional compensation became vested for any particular year fails to rise to the required degree of proper proof pertaining to the Defendant's conduct and intentions necessary to declare the debt owing to the Plaintiff by the Defendant non-dischargeable under these circumstances, particularly in light of the Bankruptcy Code's directive that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor.

36.    To the extent any of these findings of fact constitute conclusions of law, the Court expressly adopts them as such.


## CONCLUSIONS OF LAW

1.    This Court has subject matter jurisdiction under 28 U.S.C. §§1334 and 11 U.S.C. §523.  This Court has personal jurisdiction over the parties to this adversary proceeding.

2.    This Court has the authority to enter a final judgment in this adversary proceeding since it constitutes a core proceeding under 28 U.S.C. §157(b)(2)(I) and (O).

3.      The Plaintiff's Complaint seeks a determination that the debt which it alleges is owed to it should be excepted from discharge under §523(a)(2)(A) as a debt obtained by false pretenses, a false representation or actual fraud.

4.      In seeking such an exception to the Debtor's discharge, the Plaintiff assumes the burden of proof under a preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 286 (1991).

5.      All exceptions to discharge under §523 "must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start."[8] *In re Hudson*, 107 F.3d 355, 356 (5th Cir. 1997).

6.      However, the Fifth Circuit has noted that there are limits to the maxim that exceptions to dischargeability are to be construed narrowly in favor of the debtor, particularly in situations falling under an exception to dischargeability in a case in which a debtor has committed fraud. *See generally Deodati v. M.M. Winkler & Associates (In the Matter of: M.M. Winkler & Associates),* 239 F.3d 746, 751 (5th Cir. 2001).

*Nondischargeability Under 523(a)(2)(A): Debt Arising by Fraud, False Pretenses, or False Representation*

7.      11 U.S.C. §523(a)(2)(A) of the Bankruptcy Code provides that:

> a discharge under §727 of this title does not discharge an individual debtor from any debt for money, property, or services, ... to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

8.      Section 523(a)(2)(A) encompasses similar but distinct causes of action. Though other circuits have applied a uniform standard to all § 523(a)(2)(A) actions,[9] the

---

[8] However, a fresh start is not promised to all who file for bankruptcy relief, but only to "the honest but unfortunate debtor." *Grogan*, 498 U.S. at 286-87.

[9] *See, e.g., Britton v. Price (In re Britton)*, 950 F.2d 602, 604 (9th Cir. 1991); *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1287 (8th Cir. 1987). Though some bankruptcy courts outside of the Fifth Circuit have cited the decision of the United States Supreme Court in *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351(1995), in support of their proposition that all of the §523(a)(2)(A) actions are governed by the elements for actual fraud, *see, e.g., AT&T Universal Card Services v.*

Fifth Circuit has distinguished the elements of "actual fraud" and of "false pretenses and false representations." *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995).

9. The distinction recognized by the Fifth Circuit appears to be a chronological one, resting upon whether a debtor's representation is made with reference to a future event, as opposed to a representation regarding a past or existing fact. *Bank of La. v. Bercier (In re Bercier)*, 934 F.2d 689, 692 (5th Cir.1991) [A debtor's promise ... related to a future action which does not purport to depict current or past fact ... therefore cannot be defined as a false representation or a false pretense].

10. To have a debt excepted from discharge pursuant to the "actual fraud" provision in § 523(a)(2)(A), an objecting creditor must prove that:
    (1) the debtor made representations;
    (2) at the time they were made the debtor knew they were false;
    (3) the debtor made the representations with the intention and purpose to deceive the creditor;
    (4) the creditor justifiably relied on such representation; and
    (5) the creditor sustained losses as a proximate result of the representations.

    *Pentecost*, 44 F.3d at 1293, *as modified by the United States Supreme Court decision of Field v. Mans*, 516 U.S. 59 (1995) [regarding the proper standard of reliance].

11. A debt may also be declared non-dischargeable if it was obtained by false pretenses or by a false representation. While "false pretenses" and "false representation" both involve intentional conduct intended to create and foster a false impression, the distinction is that a false representation involves an express statement, while a claim of false pretenses may be premised on misleading conduct without an explicit statement. *See FNFS, Ltd. v. Harwood (In re Harwood)*, 404 B.R. 366, 389 (Bankr. E.D. Tex. 2009); *Walker v. Davis (In re Davis)*, 377 B.R. 827, 834 (Bankr. E.D. Tex. 2007).

---

*Ellingsworth (In re Ellingsworth)*, 212 B.R. 326 (Bankr. W.D. Mo. 1997); *AT& T Universal Card Services v. Alvi (In re Alvi)*, 191 B.R. 724 (Bankr. N.D. Ill. 1996); the Supreme Court in that case was actually distinguishing the language used in §523(a)(2)(A) from that utilized in §523(a)(2)(B) in order to determine the degree of reliance necessary above mere reliance in fact in order to exempt a debt from discharge under (a)(2)(A). Since the Supreme Court specifically refused to even apply their direct holding regarding the degree of reliance in actual fraud cases to cases of false pretense or false representation, 116 S.Ct. at 443, n. 8, the statement that the Court erased all distinctions between the three (a)(2)(A) actions strains credibility.

12.    "In order for the court to deny discharge of a debt under section 523(a)(2)(A) on the basis that the debt was procured by false pretenses or a false representation, the plaintiff must prove by a preponderance of the evidence that the debtor made representations that were (1) knowing and fraudulent falsehoods, (2) describing past or current facts, (3) that were relied upon by the other party." *Mosiman v Warren (In re Warren)*, 2010 WL 2640267, at *2 (Bankr. N.D. Tex., June 29, 2010) (*citing Allison v. Roberts (In re Allison)*, 960 F.2d 481, 483 (5th Cir. 1992); *see also In re Bercier*, 934 F.2d at 692 ["to be a false representation or false pretense under § 523(a)(2), the false representations and false pretenses must encompass statements that falsely purport to depict current or past facts"].

13.    Silence regarding a material fact can also constitute a false representation for purposes of 11 U.S.C. § 523(a)(2). *Bostwick v. Walker (In re Walker)*, 2012 WL 394476, at *6 (Bankr. M.D. La., Feb. 2, 2012) (*citing G.E.C.C. v. Acosta (In re Acosta)*, 406 F.3d 367, 372 (5th Cir. 2005). *Nijjar v. Schott (In re Schott)*, 2011 WL 3862026, at *15 (Bankr. W.D. Tex., Aug. 30, 2011).

14.    However, silence cannot constitute a false representation under §523(a)(2)(A) when no information has been suppressed or concealed by a debtor-defendant, since debts falling within the ambit of §523(a)(2)(A) are only those involving moral turpitude or intentional wrong. Thus, any misrepresentations, particularly through silence, must be knowingly and fraudulently made. *Mullen v. Jones (In re Jones)*, 445 B.R. 677, 721 (Bankr. N.D. Tex. 2011).

15.    Because the Court concludes that the Plaintiff has failed to prove his cause of action for actual fraud or false representation by a preponderance of the evidence, judgment must be rendered for the Debtor-Defendant in this action.

16.    To the extent any of these conclusions of law constitute findings of fact, the Court expressly adopts them as such.

17.    An appropriate judgment shall be entered consistent with these findings and conclusions.

Signed on 07/23/2012

_____

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE